UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


JEAN SURRETT,

      Plaintiff,

v.                                                      CASE NO.: 8:11-cv-60-T-23MAP

THE FIRST LIBERTY INSURANCE
COMPANY,

      Defendant.

_____/


## **ORDER**

     Jean Surrett insists a sinkhole is causing cracks in her home.  Citing poor

construction and other factors, Surrett's insurer, First Liberty Insurance Corporation

("First Liberty"), insists otherwise.  First Liberty denied Surrett's sinkhole claim, Surrett

sues (Doc. 2) for breach of the insurance policy, and First Liberty moves (Docs. 25, 26)

for summary judgment.

     In October, 2009, Surrett, subscriber to a "LibertyGuard Deluxe Homeowners

Policy," submitted a claim to First Liberty for sinkhole damage.  In accord with

Section 627.707(2), Florida Statutes, First Liberty retained an engineering firm, SDII

Global Corporation, "to conduct testing . . . to determine the cause of the loss within a

reasonable professional probability and [to] issue a report . . . ."  Under Section

627.707(5), if the engineer verifies that a sinkhole caused structural damage to the

property, the insurer must pay the claim.  SDII Global concluded that a sinkhole did not

cause the damage to Surrett's residence, and First Liberty denied the claim.  See (Doc. 32, Ex. 1)  Without informing First Liberty, Surrett hired Florida Testing & Environmental, Inc. ("FTE"), to analyze SDII Global's report.  Disagreeing with SDII Global, FTE found that a sinkhole likely caused the damage to Surrett's residence. (Doc. 25, Ex. C at 6-12)  Surrett sued, and First Liberty sought a neutral evaluation of the claim.  Fla. Stat. § 627.7074 (requiring a non-binding neutral evaluation at the request of either party).  The neutral evaluator opined that "sinkhole activity is not the cause of the distress."  (Doc. 26, Ex. 4)

First Liberty presents three grounds for summary judgment, each of which is discarded in short order.

Under Section 627.7073, sinkhole damage is verified only if an engineer determines "within a reasonable professional probability" that a sinkhole caused damage to a property.  First Liberty objects that FTE's report states merely that "sinkhole activity at the subject residence cannot be ruled out."  (Doc. 25, Ex. 3 at 6, 8)  However, FTE's failure to use the "magic words" is inconsequential.  The FTE report elsewhere states, "it is our professional opinion that the subject structure is being adversely impacted by the sinkhole activity."  (Doc. 25, Ex. 3 at 9)  The FTE report disagrees with SDII Global's findings, enumerates factors that suggest the presence of a sinkhole, and recommends more than $160,000 in repair to combat the sinkhole.  The overall import of FTE's work is unmistakably that a sinkhole caused damage to Surrett's residence.  (Doc. 25, Ex. 3 at 6-11); (Doc. 31).

Second, First Liberty attempts to deploy a statutory presumption of the validity of SDII Global's report as a shield that blocks Surrett from suing.  Section 627.7073(c)

- 2 -

states that "[t]he [] findings . . . of the insurer's professional engineer . . . as to the cause of distress to the property . . . shall be presumed correct."  First Liberty notes that "the right of a plaintiff to recover [is typically] measured by the facts as they exist when the suit [i]s instituted."  Voges v. Ward, 123 So. 785, 793 (Fla. 1929).  Because Surrett sued First Liberty without first sharing FTE's report, First Liberty contends that Section 627.707(c) renders the SDII Global report accurate as a matter of law.

First Liberty urges the introduction of a "presumption" (more akin to an "immunity") unknown to Florida law, which recognizes a presumption "affecting the burden of producing evidence" and a presumption "affecting the burden of proof."  Fla. Stat. § 90.302.  Indeed, whether Section 627.707(c) is a presumption affecting the production of evidence or is a presumption affecting the burden of proof is a question before the Florida Supreme Court.  See Universal Ins. Co. of N. Am. v. Warfel, SC10-948 (Fla.).  Beyond dispute in Warfel, however, is that Section 627.707(c) is an evidentiary presumption and not a "presumption" that can conclusively decide or foreclose the initiation of a suit.  A "conclusive" presumption would in any event likely prove invalid.  Ehrhardt, Florida Evidence, § 301.3 (2011) ("In Florida it is frequently unconstitutional to legislatively create a[n] irrebuttable presumption").

The Florida legislature left no trace of an intention to transform insurance law in the manner that First Liberty suggests.  For instance, under Section 627.7074 an adverse finding by a neutral engineer does not foreclose an insured from suing.  Hence, for the initial finding of the insurance company's hired engineer to foreclose an insured from suing would produce an untenable inconsistency.  Further, "historically, an all-risks policy encumbers the insurer with the burden to prove that a claimed loss is not

covered." <u>Warfel v. Universal Ins. Co. of N. Am.</u>, 36 So.2d 136, 138 (Fla. 2d DCA 2010) (citing <u>Wallach v. Rosenberg</u>, 527 So.2d 1386, 1388-89 (Fla. 3d DCA 1988)).   Even without an assumption that Section 627.707(c) can bestow an irrebuttable presumption before a suit begins, Section 627.707(c) is a momentous transition from the regnant legal structure governing a sinkhole claim.  Context therefore renders implausible the inference that in Section 627.707(c) the Florida legislature sought surreptitiously to introduce a novel element of immunity for sinkhole insurance companies.  In sum, the Section 627.707(c) presumption in favor of the insurer's engineer's report neither alters the fact of sinkhole damage nor forecloses litigation that attempts to discover the fact of sinkhole damage.

Finally, First Liberty argues that the insurance policy precludes Surrett from suing because Surrett failed to provide First Liberty "records and documents" "[a]s often as [First Liberty] reasonably require[d]."  (Doc. 26, Ex. 1 at 20-21)  The letter that denies Surrett's sinkhole claim closes, "[i]f you have . . . other information which we might use to reconsider our coverage decision, please call . . . ."  (Doc. 32, Ex. 1 at 2)  First Liberty claims this polite, apparently optional, open-ended request was a demand under the insurance policy for the FTE report.  Surrett denounces First Liberty's argument as a "gotcha" tactic.  First Liberty's valediction "requires" nothing and fails to trigger the condition precedent in the insurance policy.  Cf. <u>Whitman v. Am. Trucking Ass'n</u>, 531 U.S. 457, 468 (2001).

The FTE report – which piggybacks on SDII Global's report – appears vulnerable. The report finds in the author's "professional opinion" that SDII's borings "indicate . . . dissolutioning of limestone," but the report states no reason for the finding.  The report

appears to rely heavily on the fact that the residence is in a sinkhole-prone area and on the fact that the residence has a floor that varies by approximately an inch.  The report dismisses causes of the uneven floor other than a sinkhole predominantly based on Surrett's claim that visible cracking began only recently.  However, First Liberty neither includes the SDII Global report in the record nor challenges the FTE report.

First Liberty's motion (Doc. 35) for leave to reply is **DENIED**.  First Liberty's motion (Docs. 25, 26) for summary judgment is **DENIED**.

ORDERED in Tampa, Florida, on September 2, 2011.

_____
**STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE**